# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 15-cr-235(2) (JNE/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Dennis Bracey, | |
| Defendant. | |

Thomas M. Hollenhorst, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Douglas Olson, Assistant Federal Defender, Officer of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

This matter is before the Court on Defendant Dennis Bracey's Motion for Reconsideration of Detention, ECF No. 462, and Supplemental Pleading Regarding Motion for Reconsideration of Detention, ECF No. 463. The Court finds that the matter is suitable for determination without a hearing and is submitted on the papers. *See* ECF No. 464 ("The Court will endeavor to rule on this motion without a hearing; therefore, the parties should undertake to provide the Court with the information necessary to its determination in their written submissions."). For the reasons set forth below, Defendant's motion and supplemental pleading are denied.

# I. BACKGROUND

In 2015, Defendant pleaded guilty to distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  ECF Nos. 153, 155.  Defendant was sentenced to 18 months in prison, followed by three years of supervised release.  ECF No. 277 at 2-3.  Defendant was released from custody in 2017, and his term of supervised release began.  Gov't's Resp. at 2, ECF No. 468.

On January 9, 2020, Probation and Pretrial Services ("Probation") filed a Petition on Supervised Release, alleging that Defendant had violated the conditions of his supervised release that he "not commit another federal, state or local crime" and that he "abstain from the use of alcohol and other intoxicants and not frequent establishments whose primary business is the sale of alcoholic beverages."  ECF No. 277 at 3, 4; *see* ECF No. 442.  Defendant was alleged to have physically assaulted his girlfriend at a bar.  ECF No. 442 at 1; *see* Def.'s Reply at 1, ECF No. 469.

Defendant was subsequently arrested and preliminarily detained.  ECF Nos. 443, 445, 450.  Defendant was ultimately released[1] under the same conditions previously imposed in connection with his supervised release, except that Defendant was also ordered to have no contact with his girlfriend.  ECF Nos. 447, 448.

Approximately two weeks later, on February 3, 2020, Probation filed a Petition for Action on Conditions of Pretrial Release, after Defendant was arrested for being in the company of his girlfriend.  ECF No. 455 at 1.  Defendant's arrest was mere days after a

---

[1] Defendant was "released upon agreement of the parties, in part, due to his three times weekly kidney dialysis treatments, and overall medical care situation."  Def.'s Mot. for Reconsid. at 2, ECF No. 462; *see* Def.'s Reply at 1 ("[T]he [G]overnment withdrew its motion for detention and agreed to his release.").  *See infra* Section II.A.

probation officer stressed to him that he was not to have contact with his girlfriend. ECF No. 466 at 1. Not only was Defendant's conduct in violation of the conditions imposed, but it also violated a Domestic Abuse No Contact Order issued in state district court in Hennepin County, Minnesota.[2] ECF No. 455 at 1.

Defendant did not contest the violation and was ordered detained. ECF No. 459; *see* ECF Nos. 457, 458. In the Order of Detention, the magistrate judge observed that "[t]he uncontested facts . . . raise[d] serious concerns about the safety of [Defendant's girlfriend] and the community even though [Defendant's girlfriend] may have consented to the contact." ECF No. 459 at 2. The magistrate judge

> conclude[d] by clear and convincing evidence that . . . [D]efendant had violated the conditions of his pretrial release and that, based on the factors set forth in 18 U.S.C. § 3142(g), there [wa]s no condition or combination of conditions of release that w[ould] assure that . . . [D]efendant w[ould] not flee or pose a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3148(b).

ECF No. 459 at 2. Defendant is being held pending a final revocation hearing. The hearing, previously set for March 24, 2020, has been cancelled. ECF Nos. 457, 458, 461. *See In re: Updated Guidance to Court Operations Under the Exigent Circumstances Created by COVID-19*, Gen. Order No. 2 (D. Minn. Mar. 17, 2020), *available at* https://www.mnd.uscourts.gov/sites/mnd/files/2020-0317_COVID-19-General-Order-No2.pdf.

---

[2] Defendant presently has pending misdemeanor charges for domestic assault and disorderly conduct as well as a felony violation of a no-contact order in Hennepin County district court. ECF No. 466 at 1.

## II. ANALYSIS

Defendant requests reconsideration of his detention pursuant to 18 U.S.C. §§ 3142(f) and (i). *Cf.* 18 U.S.C. § 3145(b). Subsection (f) permits a detention hearing to be reopened when there is information that was not known at the time of the hearing "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the person detained] . . . and the safety of any other person and the community." 18 U.S.C. § 3142(f). Subsection (i) allows for the detained person's "temporary release" upon determining "such release to be necessary for preparation of the person's defense or for another compelling reason." *Id.* § 3142(i). The Government opposes Defendant's request.

### A. Basis for Reconsideration

Defendant is currently confined at the Sherburne County Jail and argues that the COVID-19 pandemic warrants his release. Defendant "suffers from a number of health issues, including chronic kidney disease . . . , heart issues, and a variety of other chronic conditions." Def.'s Mot. for Reconsid. at 2. Defendant receives "dialysis treatments at the jail clinic."[3] Def.'s Suppl. at 1. Defendant also "has grotesque sores protruding through the skin on his arms, and his dialysis stent is coming through his skin, which will require surgery in the very near future." Def.'s Mot. for Reconsid. at 2-3.

---

[3] At the time the motion for reconsideration was filed, it was defense counsel's understanding that Defendant was being transported in and out of the Sherburne County Jail three times per week for dialysis treatment. *See* Def.'s Mot. for Reconsid. at 1-2; Def.'s Suppl. at 1, ECF No. 463. Probation has confirmed that Defendant receives regular dialysis treatment at the jail. ECF No. 466 at 2.

Defendant argues he falls within the group of individuals most at risk for severe illness from COVID-19 and "[i]t is well accepted that transmission of this contagious disease is greater in confinement," particularly "when the confined are unable to take proactive measures to protect themselves." Def.'s Mot. for Reconsid. at 4; *see also* Def.'s Mot. for Reconsid. at 5-7; Def.'s Reply at 2-4. Defendant argues that, collectively, the nature of COVID-19, his medical condition, and "state and federal restrictions on movement" constitute new information which has a material bearing on whether there are conditions of release that will reasonably assure his appearance and the safety of the community. Def.'s Reply at 4-5. According to Defendant, the "restrictions on movement and personal risk of associating with others make it very unlikely [he] would be going anywhere other than his home and dialysis appointments." Def.'s Reply at 5. Alternatively, Defendant argues that his heightened medical risk is a compelling reason for release in light of COVID-19.

Defendant requests that he be conditionally released "under house arrest and GPS monitoring" to his sister's home, "where he was living prior to being detained." Def.'s Mot. for Reconsid. at 1.

### B. Recommendation of Probation

Following Defendant's request for reconsideration, the Court received an updated report from Probation. *See generally* ECF No. 466. The report, filed under seal but made available to counsel, expressed serious concerns about the effectiveness of location monitoring based on Defendant's failure to abide by court orders. Probation also observed that such monitoring does not prevent violence or provide oversight regarding the persons

with whom Defendant has contact. Probation recommended against Defendant's release based on the seriousness of his pending charges and violent criminal history.[4] Probation also noted that Defendant is currently able to receive medical care "without the concern of lack of transportation or community availability of services" and "the structured setting of the jail assures his sobriety which is needed to assist his chronic health condition." ECF No. 466 at 2.

### C. Section 3142(f)

As stated above, § 3142(f) permits a detention hearing to be reopened if there is information that was not known at the time of the hearing "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of . . . [the detained] person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(f). Its function "is to allow parties to present new information that increases the likelihood a defendant would appear in court or decrease[s] the potential danger a defendant poses to an individual or the community as a whole." *United States v. John Thomas White*, No. 19-cr-204 (ECT/BRT), slip op. at 3 (D. Minn. Apr. 1, 2020) [hereinafter *J. White*].

This Court, like so many others, "understands the gravity of the COVID-19 pandemic and is mindful of the unprecedented circumstances it presents for both society at large and for the prison system." *United States v. Morris*, No. 17-cr-107(01) (DWF/TNL), 2020 WL 1471683, at *3 (D. Minn. Mar. 26, 2020); *see also, e.g., United States v. Clark*,

---

[4] Defendant's criminal history includes battery; domestic assault, including by strangulation; assault of a peace officer; and being a felon in possession of a firearm. Gov't's Resp. at 6; *see* ECF No. 466 at 2.

6

No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents."). Nor does this Court doubt the genuineness of Defendant's concerns for his health. Many people share similar concerns for their own health and the health of loved ones. At the same time, "[t]he risk of harm *to the defendant* does not usually bear on [§ 3142(f)'s] analysis." *Clark*, 2020 WL 1446895, at *3.

Courts have reached different conclusions on whether the COVID-19 pandemic constitutes new information under § 3142(f). *Compare, e.g.*, *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020), *with United States v. Banks*, No. 4:19CR3116, 2020 WL 1450549, at *1 (D. Neb. Mar. 25, 2020); *see also United States v. Dodd*, No. 20-cr-0016 (NEB/HB), 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020) (citing cases). Whether making an express determination or assuming it for purposes of argument, courts often then turn to whether the COVID-19 pandemic alters the individualized assessment based on the factors set forth in 18 U.S.C. § 3142(g) of the Bail Reform Act. *See, e.g.*, *United States v. Shannon Michael White*, No. 19-cr-236 (ADM/BRT), slip op. at 6-8 (D. Minn. Apr. 3, 2020) [hereinafter *S. White*]; *Dodd*, 2020 WL 1547419, at *3; *J. White*, slip op. at 4-7; *Martin*, 2020 WL 1274857, at *3-4; *see also, e.g.*, *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158, at *1-6 (D. Md. Mar. 30, 2020); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049, at *4-5 (D. D.C. Mar. 30, 2020).

Defendant has not expressly articulated how COVID-19 bears on each of the § 3142(g) factors. Taken to their logical conclusion, his arguments touch on the third and

7

fourth factors, which take into account his personal characteristics—here, physical condition—and the danger posed by his release. *See* 18 U.S.C. § 3142(g)(3)(A), (4).

There is no dispute that Defendant suffers from kidney disease and receives dialysis treatment. Such individuals have been described by the Centers for Disease Control and Prevention to be at a higher risk for severe illness from COVID-19. *Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed Apr. 9, 2020) ("Chronic kidney disease and who are undergoing dialysis").

But, as the Government points out, Defendant's arguments based on COVID-19 do not address § 3142(f)'s "central question," namely, whether *he* "poses a flight risk or danger to the community." Gov't's Resp. at 11. *See* 18 U.S.C. § 3142(f), (g)(4); *Lee*, 2020 WL 1541049, at *5 ("[T]he statute requires the Court to evaluate '*the danger*' that 'would be posed *by the person's release*.'" (quoting 18 U.S.C. § 3142(g)(4)). They are, in essence, ones of diminished opportunity rather than decreased risk. *But see United States v. Ramos*, No. 18-cr-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020). Most recently, Defendant was detained after being found in the company of his girlfriend, an individual whom he allegedly assaulted and was ordered to stay away from by both state and federal district courts. He failed to abide by these orders. Defendant was living with his sister at the time—the same place he requests release to now. And, the location monitoring he proposes does little to reduce the danger posed by his release. *See Martin*, 2020 WL 1274857, at *4 ("While the location monitoring that he proposes may offer useful

information about where he is, it provides little useful information about what he is doing . . . .").

In sum, Defendant's medical condition combined with the nature of COVID-19 and current governmental restrictions on movement say nothing about his ability to abide by conditions of release and do not have a material bearing on the prior finding that there is no condition or combination of conditions that would assure that Defendant would not flee or pose a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3142(f); *Clark*, 2020 WL 1446895, at *3 ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis . . . ."). Without more, this Court too is "not [yet] convinced that the COVID-19 pandemic is a 'material change of circumstances' warranting a renewed evaluation of [the] prior detention order" in this case. *Banks*, 2020 WL 1450549, at *1.

**D. Section 3142(i)**

Section 3142(i) permits, in relevant part, temporary release for a "compelling reason." 18 U.S.C. § 3142(i). "Courts have used this provision 'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" *Dodd*, 2020 WL 1547419, at *3 (quoting *United States v. Hamilton*, No. 19-cr-54-01 (NGG), 2020 WL 1323036, at *2 (E. D. N.Y. Mar. 20, 2020)). "A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i)." *Clark*, 2020 WL 1446895, at *2; *accord United States v. Lunnie*, No. 4:19-cr-00180 KGB, 2020 WL 1644495, at *1 (D. Ark. Apr. 2, 2020).

9

Courts in this District and elsewhere have looked to the four nonexclusive factors set forth in *Clark* when "mak[ing] an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i)." 2020 WL 1446895, at *3; *see, e.g.*, *S. White*, slip op. at 9, 10 n.4; *Dodd*, 2020 WL 1547419, at *3-4; *J. White*, slip op. at 8-10; *see also, e.g.*, *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *4-8 (D. Nev. Apr. 2, 2020); *Lunnie*, 2020 WL 1644495, at *1-5; *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2-4 (S.D. Ohio Mar. 30, 2020). These four factors are:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Clark*, 2020 WL 1446895, at *3. The factors are not necessarily given equal weight; instead, they are "consider[ed] . . . as a whole" in determining "whether a 'compelling reason' exists such that temporary release is 'necessary.'" *Id.* (quoting 18 U.S.C. § 3142(i)).

With respect to the first factor, the Court has already discussed that the original grounds supporting Defendant's detention are strong. Nothing Defendant has presented here "effectively override[s] or at least sufficiently counterbalance[s]" the serious concerns expressed over the safety of Defendant's girlfriend and the community should Defendant be released. *Id.*

As for the second factor, Defendant has articulated more than just generalized concern over COVID-19. *See, e.g.*, *S. White*, slip op. at 9-10; *Clark*, 2020 WL 1446895, at *4; *cf. Lunnie*, 2020 WL 1644495, at *3; *J. White*, slip op. at 8-9. The COVID-19 pandemic poses significant risks to individuals who have underlying comorbidities or other significant health conditions. *See, e.g.*, *Clark*, 2020 WL 1446895, at *4. Defendant is one of those individuals. Yet, recognizing that this Court is in no better position than Defendant to guess at the "inevitab[ility] that [COVID-19] will appear" at the Sherburne County Jail, Def.'s Reply at 3, there are no known cases at present. Aff. of Brian Frank ¶ 3, ECF No. 468-1. *See Clark*, 2020 WL 1446895, at *6 ("Mr. Clark cannot predict the extent to which COVID-19 cases might arise at the facility any more than many Americans can predict how they might be exposed to the virus."); *cf. Davis*, 2020 WL 1529158, at *4. And, while Defendant's kidney disease and dialysis treatment may "weigh[] in favor of [his] release, [his medical condition] is not—by itself—determinative." *S. White*, slip op. at 10 (citing cases).

Further, as demonstrated by the Government, the Sherburne County Jail has undertaken "significant steps . . . to prevent and mitigate the risks posed by COVID-19 to inmates' health and safety." *United States v. Blegen*, No. 19-cr-304 (SRN/TNL), 2020 WL 1619282, at *5 (D. Minn. Apr. 2, 2020). These steps include but are not limited to: (1) quarantining new inmates from the general population for 14 days and monitoring them; (2) screening current inmates who complain of illness; (3) limiting staff to essential personnel, who are screened prior to entering the facility; (4) increasing the exchange of

fresh "outside" air; and (5) instituting additional cleaning measures.  Frank Aff. ¶¶ 3, 6, 7, 11, 14, 15, 16.

Turning to the third factor, "the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them."  *Clark*, 2020 WL 1446895, at *6.  While Defendant's plan for home detention at his sister's home "could potentially mitigate the risk of infection, . . . the opposite might also be true."  *J. White*, slip op. at 9.  Defendant states that he "will take his chances under house arrest at home with his family."  Def.'s Reply at 3.  But, three times per week, Defendant must receive dialysis treatment.  Whereas Defendant is currently able to receive medical care in the controlled environment of the jail, he would be required to seek medical care in the community upon release, which could very well put him at greater risk of contracting COVID-19 given the increased contact with members of the public.

As for the fourth factor, "it is also appropriate to consider the likelihood that the defendant's proposed release would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release."  *Clark*, 2020 WL 1446895, at *7.

> A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.

*Id.*

"[C]onsidering the uncertain availability of testing and occasional asymptomatic presentation of COVID-19, it is not known whether Defendant's release would increase

the risk of COVID-19 infection to others, including his sister." *United States v. Allen-Kelley*, No. 20-cr-7 (ECT/HB), slip op. at 4-5 (D. Minn. Apr. 3, 2020). The COVID-19 risk to Defendant's sister could indeed be increased if her own abilities to "stay at home" were impacted by his release—for example, if she were transporting him to his dialysis treatment. Moreover, the Court is not particularly convinced that Defendant will abide by the condition that he have no contact with his girlfriend—contact which, even if consented to, could increase her risk as well.

Lastly, Defendant urges this Court to "view this case from a practical perspective," arguing that "[t]his is a supervised release case, not a new indictment." Def.'s Reply at 6. Defendant argues that "he cannot get to state court to resolve his underlying state charges under the current circumstances, which form the heart of his federal supervised release problem," because of "his detention in federal custody and the lack of movement of detainees," and "[h]e is otherwise due to be released from supervision in June." Def.'s Reply at 2, 6. Defendant underscores that he "is in custody because he had contact with his girlfriend." Def.'s Reply at 6; *see* Def.'s Reply at 1. Defendant may be in a procedural quandary of sorts. But, ultimately, it is one of his own making when he failed to abide by the conditions of his release.

At bottom, an individual's significant health conditions, particular comorbidities, and other unique circumstances may present the rare case of release for "compelling reasons" under § 3142(i). This, however, is not that case. The Court is not indifferent to Defendant's medical condition and his heightened risk for severe illness should he contract COVID-19. The Court appreciates that confinement may not be the preferred, optimal

environment for someone with his condition. But, these less-than-ideal circumstances do not provide a compelling reason for Defendant's release when viewed in conjunction with the serious safety concerns forming the basis of his detention in the first place and the potential increased COVID-19 risk to Defendant and others should he be released.

### III. ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration of Detention, ECF No. 462, and Supplemental Pleading Regarding Motion for Reconsideration of Detention, ECF No. 463, are **DENIED**.

Date: April 9, 2020

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*United States v. Bracey*
Case No. 15-cr-235(2) (JNE/TNL)